IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GUY SANCHEZ, JR.,
KATHERINE FIGUEROA SANTIAGO,

Plaintiffs,

v.                                          CIVIL NO. 11-1542 (CVR)

KENNETH MCCLINTOCK, ET AL.,

Defendants.

## OPINION AND ORDER

## INTRODUCTION

Plaintiffs Guy Sánchez, Jr. ("Sánchez") and his wife Katherine Figueroa Santiago ("Figueroa")[1] filed claims against various government officials; to wit, the Puerto Rico Real Estate Board & Business Regulation ("PR Real Estate Board") and its members Gilberto Casillas-Esquilín ("Casillas-Esquilín"), Kenneth McClintock ("McClintock"), Eduardo Ballori-Lage ("Ballori-Lage"), in their official capacities, for prospective injunctive relief and against co-defendants Pablo J. Claudio-Pagán ("Claudio-Pagán"), Ernesto José Miranda-Matos ("Miranda-Matos") and Víctor Figueroa-López ("Figueroa-López"), in their personal capacities, for compensatory and punitive damages, legal fees, costs, and injunctive relief. Plaintiffs allege violations of civil rights under Title 42, United States Code, Section 1983.[2] Supplemental state claims are also filed under P.R. Constitution, Art. II, Section 1 and 8;

---

[1]  Plaintiff Figueroa has been a real estate broker since 1994 and a member of the Puerto Rico Real Estate Board appointed by the Governor of Puerto Rico and confirmed by the Senate on August 2007.

[2]  This Court already entered an Opinion and Order and a Partial Judgment dismissing all claims as to former co-defendants the San Juan Board of Realtors and co-defendants Héctor A. Lavergne-Vásquez, Mari Paz Catala-Fuster, John Knapp-Fussa, Pura Rohena-Figueroa, Sintia Jardin-Abreu, Angel Marrero, José A. Quevedo-Bonilla, Warren Rodríguez-Rodríguez, Wilfredo Vélez and Rolando Acosta-Trinidad.  (Docket Nos. 133 and Docket No. 135).

Law No. 14 of April 11, 2001, 1 L.P.R.A. §611, *et seq.*; Articles 1802 and 1803 of the P.R. Civil Code and Law No. 426, P.R. Laws Ann. Tit. 1, §601 (2000).  (Docket No. 79).

Remaining co-defendants, to whom the previous dismissals did not apply, who are mentioned in above paragraph filed a Motion for Judgment on the Pleadings under Fed.R.Civ.P. 12(c).[3]  The co-defendants who are sued in their individual capacity have also submitted they are entitled to qualified immunity.  (Docket No. 129).

Co-defendant Miranda-Matos submits that as to each government official defendant, the pleading must identify individual acts that violated laws and constitution.  *See* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009). On this ground  Miranda-Matos  requests dismissal for he is only mentioned in the caption of the Amended Complaint without any other reference or action attributed to him.  Since the Amended Complaint fails to sufficiently allege a cognizable claim against defendant Miranda-Matos judgment on the pleading is requested as to him under Fed.R.Civ.P. 12(c).

The remaining co-defendants sued in their individual capacities, that is, co-defendants Claudio-Pagán and Figueroa-López aver they are entitled to qualified immunity for no constitutional violations have been established as per the pleadings of the Amended Complaint. Figueroa-López and Claudio-Pagán submit their expressions alleged by plaintiffs as slander and defamation and in violation of their constitutional rights and/or retaliation were made only as concerned citizens, revealing misappropriation and misuse of public documents by plaintiffs during plaintiff Figueroa's tenure as member of the PR

---

[3]  There is no waiver of Eleventh Amendment immunity by defendants.

Real Estate Board for which reason  co-defendants' comments were not in violation of the First Amendment.  The Motion for Judgment on the Pleadings further requests dismissal of injunctive relief and supplemental claims as to all co-defendants.

On April 23, 2013, plaintiffs filed their Response in Opposition to Motion for Judgment on the Pleadings.  (Docket No. 134).  Upon leave of Court, co-defendants filed their Reply.  (Docket No. 142).  Finally, after several extensions of time, plaintiffs recently filed their Sur-reply.  (Docket No. 150).

## LEGAL DISCUSSION

The remaining co-defendants request judgment on the pleadings under Fed.R.Civ.P. 12(c), which provides:

> ... (c) Motion for Judgment on the Pleadings.  After the pleadings are closed– but early enough not to delay trial– a party may move for judgment on the pleadings.

When dealing with Fed.R.Civ.P. 12(c) all well-pleaded factual averments in the Amended Complaint are to be taken as true, but not mere conclusions or legal contentions, and the fate of said motion depends upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more material facts.  *See* Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35 (1ˢᵗ Cir. 2004).[4]  Contrary to a request for dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action, a motion under R. 12(c) implicates the pleadings as a whole.  *See*  Aponte-Torres v. University of Puerto Rico v. University of

---

[4]  Since rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, trial court must accept all of the non-movant's well pleaded factual averment as true and draw all reasonable inferences in its favor. Rivera-Gómez v. de Castro, 843 F.3d 631, 635 (1ˢᵗ Cir. 1988).

Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006).  Still, similar to R. 12(b)(6), a motion under R. 12(c) does not allow for any resolution of contested facts and the court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish movants' entitlement to a favorable judgment.  Rivera-Gómez, 843 F.3d at 635.

Co-defendants also contest the Amended Complaint must present that a particular defendant was personally and directly involved in causing the violation of plaintiffs' federally protected rights to establish a valid Section 1983.  Thus, there must be a causal connection of the alleged infringed constitutional right and defendants' acts which is absent as to Miranda-Matos.  Regarding co-defendant Miranda-Matos in particular, besides the general assertion throughout the Amended Complaint to "defendants", there is no act, omission or reference except for his name in the caption of the Amended Complaint and providing thereafter some information as to the capacity in which he is being sued.  (Docket No. 129, p. 9; Docket No. 79, caption & ¶13).  Regarding co-defendants Figueroa-López and Claudio-Pagán, being government officials, they have requested qualified immunity from personal liability.  (Docket No. 129, p. 11).

Plaintiffs Sánchez and Figueroa claim their protected speech under the First Amendment was violated by retaliatory actions of defendants on account of plaintiffs' testimonies at the House of Representative hearings on the misappropriation and malfeasance of public funds by a public agency, the PR Real Estate Board.  Plaintiffs allege co-defendants Figueroa-López and Claudio-Pagán defamed and slandered them because

of their testimonies at the House of Representatives' hearings.  These expressions were made during a roundtable conference held by the San Juan Board of Realtors where co-defendant Figueroa-López, then President of the PR Real Estate Board, was the invited speaker.

Co-defendants Figueroa-López and Claudio-Pagán submit no such freedom of expression violation claimed by plaintiffs ensued for the defendants also spoke as concerned citizens about misuse and misappropriation of public documents by plaintiffs, for personal gains, and ethic violations while plaintiff Figueroa was a member of the PR Real Estate Board.  The expressions attributed by plaintiffs to defendants Figueroa-López and Claudio-Pagán were but said defendants' efforts to set the record straight as to plaintiffs' imputations and claims of wrongdoings and cannot be construed in violation of plaintiffs' protected speech nor as  retaliation.  To the contrary,  co-defendants Figueroa-López and Claudio-Pagán submit that, as government employees speaking on matters of public concern, which was not defamatory in nature, their expressions were also protected speech.  (*Id.*, p. 14).

Qualified immunity is further sought by co-defendants Figueroa-López and Claudio-Pagán for, at the time they exercised their alleged protected speech as to events previously raised by plaintiffs, any reasonable official in their positions would have believed that their conduct was lawful.  Defendants Figueroa-López and Claudio-Pagán aver that, any and all remarks they made, were provided during State Senate proceedings before the Commission for Urban Housing and Development, as well as during the roundtable conference, and in

direct response to public allegations made by plaintiffs in reference to malfeasance and misuse of public funds and other imputation of wrongdoings and as their effort to rebut plaintiffs' allegations against defendants.  These co-defendants contend their comments were countering plaintiffs' protected speech with their own protected speech.  (*Id.*, p. 15). Additionally in co-defendants' reply, dismissal is reiterated as to any claims regarding co-defendant Miranda-Matos.  (Docket No. 142, pp. 3-4).

Plaintiffs' opposition asserts, although indirectly, that the Amended Complaint has indeed failed to establish direct arguments or attributed particular acts incurred by Miranda-Matos with the constitutional violations claimed.  Plaintiffs argue the Court should rather examine the cumulative effect in the Amended Complaint as alleging wrongdoings by every member of the PR Real Estate Board.  As such, plaintiffs confirm that co-defendant Miranda-Matos should be considered liable for the acts specifically attributed to other members of said Board and/or because of his silence or failure to act as to the events that transpired against plaintiffs carried out by the other co-defendants.  (Docket No. 134).

Plaintiffs' sur-reply which rests on the cumulative effect of plaintiffs' factual allegations to be considered as to each member of the Board in violating constitutional rights be equally applied to co-defendant Miranda-Matos for it should be assumed that said co-defendant  knew, authorized or approved the illegal actions of the President of the Board, co-defendant Figueroa-López, whose expressions at the roundtable were considered defamatory, retaliatory and in violation of plaintiffs' rights.  (Docket No. 150, pp. 2-3).

Guy Sánchez, Jr., et al. v. Kenneth McClintock, et al.
Opinion and Order
Civil No. 11-1542 (CVR)
Page No. 7

The herein co-defendants have further requested in their motion for judgment on the pleadings dismissal of injunctive relief on grounds that plaintiffs fail to state any claim cognizable under Section 1983. (Docket No. 129, pp. 16-20). In consequence, dismissal of supplemental claims is also requested upon absence of federal claims. (*Id.*, pp. 20-23).

## A.   Co-defendant Miranda-Matos.

The parties' arguments as to defendant Miranda-Matos evidence that indeed he is only mentioned in the caption of the Amended Complaint and in reference to the capacity or position he holds as a member of the PR Real Estate Board, without more. There is no factual allegation or a single concrete mention as to any particular action undertaken by co-defendant Miranda-Matos that would make him personally liable for the acts complained as a violation of plaintiffs' rights.

Government officials may not be held liable under a Section 1983 for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* for vicarious liability is inapplicable to these kind of claims. Instead, an officer may be found liable on account of his own acts or omissions. Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576 (1st Cir. 1984).

Plaintiffs' arguments to sustain co-defendant Miranda-Matos to remain as a defendant are that, a reading of the Amended Complaint in general, should be construed as presenting the cumulative effect of wrongdoings by every member of the PR Real Estate Board without having to attest with particularity any individual member's participation in the constitutional violation of plaintiffs' rights. It is clear from the record and from the

parties' arguments that there is no inference as to co-defendant Miranda-Matos' liability for the wrongs or misconduct alleged as to other co-defendants who, being also members of the PR Real Estate Board, were clearly identified as to their respective participation. Since Section 1983 does not provide for vicarious liability, each officer is to be held liable for his/her own misconduct as to plaintiffs.

The plausibility effect discussed by plaintiffs as provided by the pleadings as a whole is one geared towards the cause of action being claimed not to the individual defendants' participation which still needs to be identified for liability to ensue.  The Court of Appeals held as *dictum* in Dunham v. Crosby, 435 F.2d 1177 (1st Cir. 1970) that the civil right violation cause of action be dismissed as to school board members who were sued under the principle of *respondeat superior* for it contemplates only liability for persons who have actually abused their position of authority.  Thus, only persons who were directly involved in the wrongdoing may be held liable.  Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007) (*citing* Kostka v. Hogg, 560 F.2d 37, 39 (1st Cir. 1977)).

Having plaintiffs included Miranda-Matos solely in his personal capacity and not for purposes of official capacity for injunctive relief, which is limited to the PR Real Estate Board itself and co-defendants members Casillas-Esquilín, McClintock, and Ballori-Lage, it is proper to grant judgment on the pleadings as to co-defendant Miranda-Matos.

Guy Sánchez, Jr., et al. v. Kenneth McClintock, et al.
Opinion and Order
Civil No. 11-1542 (CVR)
Page No. 9

---

**B.      Qualified Immunity.**

Remaining co-defendants Claudio-Pagán and Figueroa-López who were sued also in their personal capacities, request judgment on the pleadings for being entitled to qualified immunity.  (Docket No. 129).

The qualified immunity doctrine allows public officials who are named defendants to have immunity from suit so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102  S.Ct. 2727, 2738 (1982); El Día, Inc. v. Governor Rosselló, 165 F.3d 106 (1st Cir. 1999).  In ruling on qualified immunity courts must examine whether the facts alleged or shown by plaintiffs make out a violation of a constitutional right, and if so, whether the right was one clearly established at the time of defendants' alleged violation. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818-19 (2009); Mosher v. Nelson, 589 F.3d 488 (1st Cir. 2000) (recently the Supreme Court gave courts discretion to address the "clearly established" step without first determining whether a constitutional right had been violated).[5]

Insofar as whether the facts of the Amended Complaint, which are to be taken as true, have established the necessary elements as to these co-defendants Claudio-Pagán and

---

[5]  In resolving qualified immunity, courts need not first determine whether facts alleged or shown by plaintiff make out violation of constitutional right for courts may exercise sound discretion in deciding which of the two prongs to address first in light of circumstances in the particular case at hand.  The previous procedure in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001) is not inflexible.  Pearson,  555 U.S. at 224.

Figueroa-López, and the particular acts undertaken to substantiate the claimed constitutional violations under Section 1983, reference to the pleadings is necessary. Succinctly, the Amended Complaint refers that:

Upon plaintiffs making public expressions before the P.R. House of Representatives' hearings in regard to matter of public concern, as well as former complaints to the PR Real Estate Board State, the Comptroller's Office, the Ombudsman Office, the Civil Rights Commission, the Secretary of State and the Governor's Office, defendants Claudio-Pagán and Figueroa-López infringed their constitutional rights and retaliated, to wit:

Plaintiff Figueroa was not recognized as a new member of the PR Real Estate Board and was not allowed to attend meetings while being an appointed member of the PR Real Estate Board;[6] (Docket No. 79, ¶¶ 31-32, 36).

Defendants signed a complaint form, without the official approval or consent from the PR Real Estate Board, to submit a criminal complaint against plaintiff Figueroa with the State Attorney General's Office of the Commonwealth of Puerto Rico; (*Id.*, ¶¶ 38, 44).

Defendants did not invite plaintiff Figueroa, a member of the Board, to participate in a workgroup for real estate project law and educational committee; (*Id.*, ¶¶ 48-50).

Defendants asked plaintiff Figueroa, a member of the Board, to step outside and fired her from a meeting to review the new reform of Law No. 596 regarding real estate professionals; (*Id.*, ¶51).

Defendants requested plaintiff Figueroa to resign from the PR Real Estate Board; (*Id.*).

Defendants accused plaintiff Figueroa of stealing documents from the State Department knowing she had testified in a discrimination lawsuit and

---

[6] Plaintiff Figueroa was appointed by the Governor of Puerto Rico on August 2007 and confirmed by the Senate on November 2007 as a member of the PR Real Estate Board. (Docket No. 79, ¶ 28).

accused her of being untrustworthy and unfit to serve on the PR Real Estate Board; (*Id.*, ¶ 52).

After plaintiffs testified before the Housing and Urban Development Commission's investigative hearings in the House of Representatives regarding irregularities and illegal behavior of the PR Real Estate Board and made related reports also to the PR Real Estate Board State, the Comptroller's Office, the Ombudsman Office, the Civil Rights Commission and the Secretary of State and the Governor's Office, defendants launched a verbal attack against plaintiff Figueroa at a Board's meeting on October 8, 2009; (*Id.*, ¶¶ 52-71).

Plaintiffs were not notified nor invited to a meeting with the San Juan Board and the PR Real Estate Board to organize a roundtable conference where one of the main topics involved plaintiffs' testimonies and complaints before the House of Representatives and a federal case filed by plaintiffs;   (*Id.*, ¶¶ 76-78).

The Amended Complaint also makes reference as to the statements presented to the audience by then President of the PR Real Estate Board, co-defendant Figueroa-López,  at the roundtable conference attended by members of the San Juan Board, PR Real Estate Board, professionals, executives, brokers, bankers, realtor, where plaintiffs were slandered, defamed and publicly humiliated, to wit;

telling the audience they would have to pay $15.5 millions for plaintiffs had filed a discrimination lawsuit; (*Id.*, ¶¶ 89-90).

questioning the credibility of the discrimination lawsuit filed by plaintiffs against the PR Real Estate Board; (*Id.*, ¶ 91).

questioning whether plaintiff Figueroa was a member of the PR Real Estate Board; (*Id.*, ¶93).

expressing the reason for the investigation by the House of Representatives' Commission was  because of plaintiff Figueroa's law violations not by the PR Real Estate Board; (*Id.*, ¶95).

telling the audience plaintiff Figueroa had not done anything as a member of the PR Real Estate Board and failed to contribute in any manner; (*Id.*, ¶ 98).

telling the audience plaintiffs had falsely testified at the Commission that the former President of the PR Real Estate Board lack an active license; (*Id.*, ¶99).

addressing executives of the banking industry as to an e-mail from plaintiff stating the banks were selling real estate without a license; (*Id.*, ¶ 100).

telling the audience plaintiff Figueroa had refused to sign real estate licenses to be issued to applicants, attend meetings and sign required documents; (*Id.*, ¶105).

stating to the audience co-plaintiff Sánchez had filed a $10 million discrimination suit in federal court, had attempted to take the real estate examination in English and committed perjury in federal court; (*Id.*, ¶¶ 109-110).

stating to the audience plaintiff Figueroa had illegally obtained official documents from the Department of State to use in the discrimination suit taking advantage of her public position for her own benefit which is a crime under the PR Penal Code, falsely making the impression having in his hands the stolen documents; (*Id.*, ¶¶ 112-113).

telling the audience plaintiff Sánchez has an intimate relationship with another woman, not his wife, co-plaintiff Figueroa; (*Id.*, ¶ 114).

stating to the audience plaintiff Figueroa had falsely testified before the Commission by stating she had filed complaints with the Comptroller's Office; (*Id.*, ¶ 115).

Plaintiffs submit the defendants, while acting under color of state law, by their actions, violated their First Amendment rights and have retaliated because of their testimonies and expressions as concerned citizens in matters of public concern.

The Highest Court explained the process to determine qualified immunity in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151 (2001). A court must determine, taken in the light most

favorable to the party asserting the injury, if facts alleged show the officer's conduct violated a constitutional right. *Id*. at 201, 121 S.Ct. 2156. A further analysis of qualified immunity also requires examination of whether the alleged constitutional violation to plaintiffs' First Amendment right were clearly established at the time of the actions wherein co-defendants Figueroa-López and Claudio-Pagán participated. *See* Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009). The question of whether a right is clearly established is an issue of law for the court to decide. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019 (1st Cir. 1994).[7] Defendants herein have argued there is no constitutional violation but even if so, qualified immunity should be granted.[8]

Besides the above discussed, a qualified immunity determination also requires the subsidiary issue of whether a reasonable officer, similarly situated as defendants, would understand that the challenged conduct violated the established right. Suboh v. District Attorney's Office of Suffolk Dist., 298 F.3d 81 (1st Cir. 2002). A finding of qualified immunity would be warranted if a reasonable officer would have believed the conduct claimed was lawful but qualified immunity is not warranted if no reasonable officer could belief that his conduct was lawful. In other words, qualified immunity will issue when officers of reasonable competence could disagree on the lawfulness of the action, but it will

---

[7] DeMayo v. Nugen, 517 F.3d 11 (1st Cir. 2008) under qualified immunity tests the Court is to determine whether an objectively reasonable official would have believed his actions violated established rights of plaintiffs. In other words, that defendants had fair warning their conduct violated such rights when the courts have previously ruled that materially similar conduct was unconstitutional. Jennings v. Jones, 499 F.2d 2 (1st Cir. 2007).

[8] A failure to present a constitutional claim obviates the need to address qualified immunity defense. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (*citing* Suboh v. Dist. Attorney's Office, 298 F.3d 81, 90 (1st Cir. 2002)).

not issue if it is obvious that no reasonably competent officer would have concluded that the action was unlawful.   *See* Lopera v. Town of Coventry, 640 F.3d 388, 398 (1st Cir. 2011).[9]

Plaintiffs' opposition insofar as qualified immunity requested by defendants avers they have sufficiently alleged a constitutional violation in regards to their First Amendment claim for they were publicly humiliated, defamed and embarrassed for having expressed themselves freely on matters of public concern.   Additionally, plaintiffs assert that defendants' defense that they also spoke as concerned citizens is not appropriate to defeat the pleadings of the Amended Complaint as to plaintiffs' protected speech nor to substantiate their qualified immunity request.  (Docket No. 134).

Public employees "do not forego all the protections of the First Amendment by virtue of working for the government." Barton v. Clancy, 632 F.3d 9, 27-28 (1st Cir. 2011) (*citing* Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir.2010)).   The Supreme Court's jurisprudence has long protected the First Amendment rights "not only of the employees themselves, but of the general public in receiving the well-informed views of government employees engaging in civic discussion." *Id*. In evaluating whether a challenged government action violates a public employee's First Amendment right to freedom of speech, the Court examines whether:  (1)  the employee spoke as a citizen on a matter of public concern; (2) the relevant government entity had an adequate justification for treating the employee

---

[9]  Plaintiffs herein must identify authority sufficiently particularized that the unlawfulness of an act would have been apparent to all officers of reasonable competence under the facts alleged.  Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999).

differently from any other member of the general public, and (3) the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment decision.  *See* Curran v. Cousins, 509 F.3d 36, 45 (1ˢᵗ Cir.2007) (*quoting* Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951 (2006)).

Defendants Claudio-Pagán and Figueroa-López herein have not contested that plaintiffs spoke on matters of public concern, for at this stage they need to accept the pleading of the Amended Complaint and this Court also accepts said conclusion. Defendants rather submit they were also making their statements and public expressions, considered and alleged by plaintiffs as defamatory and in retaliation, as their own protected speech.  As such, the mandatory first step to the qualified immunity analysis is acquiesced by defendants and used as a trampoline for their argument that plaintiffs' statements as to corruption and malfeasance of the PR Real Estate Board had to be refuted and straightened out through defendants' statements.  Thus, plaintiffs' allegations taken as true have established a constitutional violation for plaintiffs engaged in speech on matters of public concern, their interest in speaking and the public interest outweighed any legitimate governmental interest in the efficient performance of its public function and speech was the motivating factor in defendants' retaliation.  Curran v. Cousins, 509 F.3d at 44-45; *see* Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684 (1983).

Qualified immunity defense cannot be based, in a motion to dismiss, a summary judgment or judgment on the pleadings on factual assertions not found in the Amended Complaint and disputed material facts are to be left for a jury.  Co-defendants herein

Claudio-Pagán and Figueroa-López are attempting to present that their own statements were for the purpose of setting the record straight as to plaintiffs' statement against defendants and, thus, not libel or in violation of plaintiffs' First Amendment rights. Ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other context for the dominant purpose of the First Amendment is to prohibit the widespread practice of governmental suppression of embarrassing information. *See* New York Times Co. v. United States, 403 U.S. 713, 723-24, 91 S.Ct. 2140 (1971). El Día, Inc. v. Rosselló, 165 F.3d at 110 n. 3 (declining to adopt "a hard-and-fast rule" that out-of-circuit precedent is either determinative of or irrelevant to whether a law is clearly established, and instead stating that whether precedent "clearly establishes" a law may depend in part upon "the location and level of the precedent, its date, its persuasive force, and its level of factual similarity to the facts before this Court").

Besides the defendants' public statements claimed to be in violation of First Amendment rights in the Amended Complaint, plaintiff Figueroa indicates other co-defendants' actions in that they did not recognize her appointment as member of the PR Real Estate Board, she was secluded from their official meetings, not invited to conferences, as well as criticized publicly for her official actions or alleged omissions as a member of the Board in, among others having done anything as a member of the PR Real Estate Board, failing to contribute in any manner, refusing to sign real estate licenses to be issued to applicants, to attend meetings and to sign required documents. A traditional employment relationship is not a prerequisite to a First Amendment retaliation claim yet co-plaintiff

Figueroa as a member of the PR Real Estate Board held a particular employment/position with said public institution.  It could be generally argued also that she had a property right to the exercise of her position and all the prerogatives it entailed.  Official retaliation is actionable also because it tends to chill individual's exercise of constitutional rights.  *See* Powell v. Alexander, 391 F.3d 1 (1st Cir. 2004).

Government officials such as co-defendants Claudio-Pagán and Figueroa-López cannot deprive an individual of a valuable government benefit for the exercise of First Amendment rights.  A general claim of retaliation for the exercise of First Amendment rights is cognizable under Section 1983 and the exercise of First Amendment is constitutionally proscribed reason for denial of government benefit.  Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005).

In Barton v. Clancy , 632 F.3d 9 (1st Cir. 2011) the Court of Appeals for the First Circuit said that "more generally, [the inquiry focuses] on whether the defendants' acts would have a chilling effect on the employee's exercise of First Amendment rights." *Id*.  *See* Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 674, 116 S.Ct. 2342 (1996) (holding First Amendment protection applies to government contracts as well as government employees for in either case government efforts may chill speech on matters of public concern).

As such, insofar as plaintiffs having established a violation of constitutional claims, the qualified immunity examination fulfills the first stage of compliance both as to First Amendment rights and retaliation.

Defendants' submission in their response to plaintiffs' opposition was to the effect that they themselves were speaking protected speech by countering plaintiffs' statements before the House of Representatives' Commission and as to the discrimination lawsuit.  If such a speech is to be considered protected under the First Amendment it is to be determined from the content, form and context of the given statement, as revealed by the whole record.  *See* Connick v. Myers, 461 U.S. 138, 148, 103 S.Ct. 1684, 1690 (1983); Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois, 391 U.S. 563, 88 S.Ct. 1731 (1968).  However, contrary to a judgment on the pleadings wherein the Amended Complaint statements are to be taken as true, the issues raised by defendants in their responses receive no such deference.  Although the ultimate question of qualified immunity is a question of law, material factual disputes are to be resolved by a jury.  St. Hilaire v. City of Laconia, 71 F.3d 20, 24 n. 1 (1st Cir. 1995).[10]

We briefly address the second prong of the qualified immunity defense, that is, whether the right was one clearly established at the time of defendants' alleged violation. The Court of Appeals for the First Circuit stated back in 2004 that insofar as First Amendment rights speech on matters of public concern was firmly established so as to deny a motion to dismiss on qualified immunity grounds.  Mihos v. Swift, 358 F.3d 91 (1st Cir. 2004).

Taking plaintiffs' allegations as true to establish a constitutional violation, it has already been in accord that the speech, testimonies or expressions involved in the present

---

[10]  De Abadia v. Izquierdo Mora, 792 F.2d 1187, 1190 (1st Cir. 1986) (*citing* Fernández v. Leonard, 784 F.2d 1209, 1214, n. 2 (1st Cir. 1996)).

Guy Sánchez, Jr., et al. v. Kenneth McClintock, et al.
Opinion and Order
Civil No. 11-1542 (CVR)
Page No. 19

---

case related to a matter of public concern, dealing with a public entity and with public funds which resulted in an investigation conducted by the Committee appointed by the P.R. Legislature.  Also,  such protected speech was a substantial and/or motivating factor in the adverse action as to plaintiffs for defendants have indicated they themselves were required to set the record straight as to plaintiffs' allegations of misuse of funds and irregularities by the PR Real Estate Board for which reason should consider  defendants' expressions also as protected speech.  Therefore, plaintiffs were speaking as citizens on matters of public concern not merely on issues of personal interest as it stems from both the pleadings of the Amended Complaint, as well as from defendants' averments in their motion to dismiss. Jordan v. Carter, 428 F.3d 67 (1st Cir. 2005).

Insofar as plaintiffs' speech and/or statements being the motivating factor for the defendants' statements that served as grounds for the breach of the claimed rights, although a factual determination, at this stage of the proceedings being well pleaded it should be taken as true for in dealing herein with a motion for judgment on the pleadings based on the Amended Complaint, the facts therein alleged in the complaint are controlling.  Mihos, 358 F.3d at 99.[11]

Accordingly, this Magistrate Judge considers that the rejection of qualified immunity defense at this stage is proper as the defense raised by co-defendants Claudio-Pagán and

---

[11]   Defendants have not raised any argument or concern the speech made by plaintiffs, including their testimonies, raised only issues of personal interest or that these were restricted from speaking as to any internal matters regarding the PR Real Estate Board so as to avoid obstruction or hamper the efficiency of the public services it performed.

Figueroa-López for their acts as to plaintiffs turns into factual matters and even credibility issues. Stella v. Kelley, 63 F.3d 71 (1st Cir. 1995).[12]

## C. Injunctive Relief.

Appearing defendants request injunctive relief not be entertained on grounds that if the federal claims for a constitutional violation are absent, there would be no injunctive request to sustain said relief. As above discussed, the federal claims survive the judgment on the pleadings request.

Still, one must examine the criteria upon which plaintiffs would be entitled to injunctive relief. The reasonableness of the inference of liability to be drawn from the facts alleged in the Amended Complaint, as related to the likelihood of success on the merits initiates the analysis. Each defendant's role in the adverse decision or retaliatory action predicated on First Amendment grounds must be sufficiently alleged to foster a plausible claim as to said defendant.

The Amended Complaint submits that co-defendant Figueroa-López, as president of the PR Real Estate Board, is being sued in his individual capacity, as was co-defendant Claudio-Pagán, a former member of said Board. (Docket No. 79, ¶¶ 10, 11). At the time of the first meeting of the Board, on September 6, 2007 when plaintiff Figueroa appeared accompanied by her brother, co-defendant Figueroa-López told her he did not recognize plaintiff Figueroa as a new member and she had to be removed from the PR Real Estate

---

[12] Claudio-Pagán and Figueroa-López are the only co-defendants who are being sued in their personal capacity and as to whom qualified immunity may apply. Personal capacity defendants, unlike those sued in their official capacities, may assert common law personal immunity defenses such as qualified immunity. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 362 (1991).

Board.  Co-defendant Claudio-Pagán, as member of the Board, stated having information

to prove plaintiff Figueroa should not be part of the PR Real Estate Board and both co-

defendants refused to continue the meeting with plaintiff Figueroa being present.  (*Id.*,

¶¶31-34).  Figueroa-López and Claudio Pagán, without approval of other members of the

Board and its then President Freddy Vélez,  submitted a complaint referring same to the

state attorney's office for criminal action against plaintiff Figueroa and her brother Víctor

Figueroa Santiago. (*Id.*, ¶¶ 38, 44).  In 2009, Figueroa-López became President of the PR

Real Estate Board.  Plaintiff Figueroa, a Board member, was not invited to participate in

workgroup nor meetings as to educational committees that are normally conducted in the

State Department.  (*Id.*, ¶¶ 47-50).  On July 15, 2009, when plaintiff Figueroa arrived for

a meeting regarding a new reform law, Figueroa-López asked her to step outside due to an

alleged conflict of interest and asked for her resignation for plaintiff's husband, herein co-

plaintiff Sánchez, wrote the revision of said reform law. (*Id.*, ¶51).  Co-defendant Figueroa-

López accused plaintiff Figueroa of stealing documents to assist her husband co-plaintiff

Sánchez in a discrimination lawsuit and for testifying, making her unfit and untrustworthy

to serve on the PR Real Estate Board.  (*Id.*, ¶52).

Plaintiffs Figueroa and Sánchez testified and submitted evidence as public and

concerned citizens regarding malfeasance of public funds by PR Real Estate Board and

reported violations, among others, with the Comptroller's Office.  Plaintiffs also reported

in public and executive hearings with legislative members of the Housing and Urban

Development Division Commission violations of law as to real estate funds and money

collection with account distributions. (*Id.*, ¶¶ 53-59). Co-defendants Figueroa-López and Claudio-Pagán were summoned by the Commission to testify accompanied by counsel for the PR Real Estate Board. (*Id.*, ¶ 70).

The PR Real Estate Board, together with the San Juan Board, organized a public conference on June 10, 2010 to which plaintiffs were not invited or notified although being members of the San Juan Board, co-plaintiff Figueroa being a Board member and co-plaintiff Sánchez a designated instructors of the National Association of Realtors whose former students were invited and participated in putting the conference together. A press release on June 12, 2010 referred the roundtable was to be held where all members where invited and the general public with the President of the PR Real Estate Board at Centro Europa Building on June 17, 2010 to discuss, among the topics, the investigation conducted by the Commission. Co-defendants Claudio-Pagán and Figueroa- López met with the President of the San Juan Board to discuss about the conference and plaintiff Figueroa was told she was not considered part of the approval process. (*Id.*, ¶¶ 77-82).

At the conference held on June 17, 2010 which executives, brokers, bankers, realtor and members of the PR Real Estate Board and San Juan Board attended, plaintiffs were slandered, accused, defamed and humiliated by Figueroa-López who identified himself speaking as President of the PR Real Estate Board. (*Id.*, ¶¶ 83-88). Plaintiffs detail all the statements made by Figueroa-López against them which were false and in reference to plaintiffs having testified before the legislative Commission. (*Id.*, ¶¶ 89-115).

Injunctive relief as to the incorporated description of acts of co-defendants in their official capacities is requested in the Second Cause of Action for co-defendant Figueroa-López made and thereafter repeated similar expressions in newspapers in the year 2011 and, thus, continues to slander and defame plaintiffs causing harm to their reputations, personal and professional lives and their business for which plaintiffs are losing or are threatened with loss of business that cannot be quantified. (*Id.*, ¶¶ 136-146).

Plaintiffs' opposition to dismissal of injunctive relief submits having presented sufficient facts as to a constitutional violation and identifying with particularity defendants' participation in the challenged conduct. The facts also present continuing and present adverse effects, as well as real and immediate threat that co-defendants would again incur in the conduct for after the main event in 2009, by May of 2011 defendants reiterated the same expressions that were considered defamatory and retaliatory. Furthermore, a constitutional violation is per se irreparable harm for purposes of preliminary injunctive relief, particularly when dealing with free speech and the chilling effect of the offending conduct. (Docket No. 134, pp. 13-15).

Injunctive relief is available if plaintiffs can state a valid cause of action, that is, the probability of success, a significant risk of irreparable harm if the injunction is withheld, a favorable balance of hardships and balancing the factors favors the public interest in granting same. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1ˢᵗ Cir. 2008); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1ˢᵗ Cir. 1996).

Guy Sánchez, Jr., et al. v. Kenneth McClintock, et al.
Opinion and Order
Civil No. 11-1542 (CVR)
Page No. 24

A perusal of the allegations in the Amended Complaint is specific enough that, upon judgment on the pleadings being denied as above discussed, the injunctive relief requested may prevail in the instant situation and would not be subject of dismissal once plaintiffs establish their constitutional violations.   More so, upon dealing with a situation subject of becoming repetitive that will continue to affect their livelihood,  business, occupation and professional development, which plaintiffs and co-defendants will continue to face and the prospective of harm which, from the factual situation presented by plaintiffs in the Amended Complaint, seems real.   Dealing with a retaliatory act for First Amendment protected speech, irreparable harm is present.   Clearly the balancing of interest in this scenario would promote a finding that hardship and the balancing of public interest would favor plaintiffs' position if they prevail in their claims.

Consonant with above discussion, dismissal of injunctive relief requested in defendants' motion for judgment on the pleadings as to the Second Cause of Action of the Amended Complaint against the Puerto Rico Real Estate Board, its members Casillas-Esquilín, McClintock, Ballori-Lage, Claudio-Pagán and Figueroa-López, in their official capacities, is not proper and is also denied.

## D.    Supplemental Claims.

### 1.  Torts, Art. 1802.

Defendants request in their motion for judgment on the pleadings supplemental claims be dismissed insofar that plaintiffs have claimed damages under the P.R. Civil Code, Art. 1802.  However, said claim is predicated on the court having dismissed at the pretrial

level federal claims and, thus, there being an absence of any cognizable basis for federal jurisdiction.  Such is not the situation at bar and serves no grounds for the dismissal requested.

In the alternative, and as additional ground, defendants throw an Eleventh Amendment immunity for damages claims against the State which is also based on absence of a federal claim.  Defendants submit the request for damages solely under state law provisions should not be federally entertained and be dismissed without prejudice to be renewed at state level.  Such request would be proper only when unfavorable disposition of plaintiffs' federal claims at early stages of suit has ensued, which is not the situation at bar for there has been no dismissal of federal claims.[13]

Thus, the general doctrine prevails that a federal court may exercise jurisdiction over supplemental or state claims that arise from same nucleus of operative facts.  United Mine Worker of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966);  *see* Sánchez v. Pereira-Castillo, 590 F.3d 31, 55-56 (1st Cir. 2009) (when it was error to dismiss some of plaintiff's federal claims, the state law claims previously dismissed are reinstated).[14]

---

[13]   When plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the federal claim at early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice.  Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011) (*citing* to Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) and Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995)).

[14]   ...in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the Constitution.  28 U.S.C. §1367(a).

### 2.  Laws No. 426 and 14.

Defendants make a one sentence assertion that there is no cognizable claims under Law No. 426 and Law No. 14 and these should run the same fate as supplemental claims of Art. 1802 when federal claims have been dismissed.  Since no such dismissal of federal claims has been allowed, the argument falls.  If defendants attempt to raise any further argument for dismissal of these state law claims, they are bound by United States v. Zannino, 895 F.2d 1, 7 (1st Cir. 1st 1990) in that arguments adverted to in a perfunctory manner or unaccompanied by some effort at developed argumentation are deemed waived.

### CONCLUSION

Considering the above discussed, the Motion for Judgment on the Pleadings (Docket No. 129) is GRANTED IN PART AND DENIED IN PART as follows:

- GRANTED as to co-defendant Ernesto José Miranda-Matos.

- DENIED as to the all remaining co-defendants in their official and/or personal capacities and as to the causes of action for civil rights violations and/or injunctive relief, as well as to any supplemental and/or pendent claims.[15]

---

[15]   The Amended Complaint presents: Third Cause of Action as tort claim under PR Civil Code art. 1802 predicated on the same relevant acts and conducts; Fourth Cause of Action for violations of Law No. 426 insofar as co-plaintiff Figueroa being a public official and acting as a witness before the Legislature and in a federal lawsuit; Fifth Cause of Action of co-plaintiff Sánchez as per Law No. 14 (1 L.P.R.A. sec. 611 *et seq.*) as an individual who denounced acts of corruption against public funds –Puerto Rico Whistleblower's Protection Acts– ; and a Sixth Cause of Action as general claim for slander and defamation under state law.

Guy Sánchez, Jr., et al. v. Kenneth McClintock, et al.
Opinion and Order
Civil No. 11-1542 (CVR)
Page No. 27

_____

IT IS SO ORDERED.

San Juan, Puerto Rico, this 3rd day of July of 2013.

S/ CAMILLE L. VELEZ RIVE
CAMILLE L. VELEZ-RIVE
UNITES STATES MAGISTRATE JUDGE